UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARY MAIORIELLO,

                                Plaintiff,                    1:14-CV-0214
                                                              (GTS/CFH)
v.

NEW YORK STATE OFFICE FOR PEOPLE
WITH DEVELOPMENTAL DISABILITIES,
formerly known as New York State Office of
Mental Retardation and Developmental
Disabilities; KATHERINE BISHOP, in her
Individual and Official Capacity; MAX E.
CHMURA, in his Individual and Official
Capacity; DIANA JONES RITTER, in her
Individual and Official Capacity; DAVID M.
SLINGERLAND, in his Individual and
Official Capacity; LESLIE MEISNER, in her
Individual and Official Capacity; BILL
MURRAY, in his Individual and Official
Capacity; LESLIE FLEUD, in her Individual
and Official Capacity; KATHY LABARGE,
in her Individual and Official Capacity; and
JOHN DOE(S) and JANE DOE(S);

                                Defendants.
_____

APPEARANCES:                                      OF COUNSEL:

BOSMAN LAW OFFICE, L.L.C.                          A.J. BOSMAN, ESQ.
  Counsel for Plaintiff
6599 Martin Street
Rome, New York 13440

ERIC T. SCHNEIDERMAN                               MARIA E. LISI-MURRAY, ESQ.
Attorney General of the State of New York          Assistant Attorney General
  Counsel for All Defendants Except Leslie Meisner
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

**<u>DECISION and ORDER</u>**

Currently before the Court, in this retaliation action filed by Mary Maioriello ("Plaintiff") against the New York State Office for People with Developmental Disabilities ("NYS OPWDD"), Katherine Bishop, Max Chmura, Diana Ritter, David Slingerland, Bill Murray, Leslie Fleud,[1] and Kathy LaBarge (collectively "Defendants"),[2] are the following two motions: (1) Defendants' motion to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 6); and (2) Plaintiff's cross-motion for leave to file and serve an Amended Complaint pursuant to Fed. R. Civ. P. 15(a)(2) (Dkt. No. 13). For the reasons set forth below, Defendants' motion is granted in part and denied in part, and Plaintiff's cross-motion is granted in part and denied in part.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Generally, liberally construed, Plaintiff's Complaint alleges as follows. (Dkt. No. 1.) In April 2010, Plaintiff began her employment with NYS OPWDD as a Developmental Aide Trainee at the facility known as "O.D. Heck." (*Id.*, ¶ 10.) Her duties involved providing support, care, assistance and attention to disabled clients known as "consumers" with regard to activities of daily living. (*Id.*) During her employment, Plaintiff observed NYS OPWDD staff

---

[1]     The Court notes that Defendant Fleud's name has been incorrectly spelled and should be spelled "Fuld." (Dkt. No. 6, at 2 n.2 [Defs.' Mem. of Law] [noting spelling error]; Dkt. No. 13, Attach. 4, at 1 [Pl.'s Proposed Am. Compl.] [correcting spelling error].) The Clerk of the Court is directed to correct this error on the docket sheet.

[2]     Plaintiff's Complaint also asserts claims again Leslie Meisner. (Dkt. No. 1.) However, because Plaintiff has failed to serve Ms. Meisner, Ms. Meisner has not appeared in this action. (*See generally* Docket Sheet.) The Court notes that Plaintiff's proposed Amended Complaint seeks to amend Leslie Meisner's name to "Lisa Meisner." (Dkt. No. 13, Attach. 4, at 1 [Pl.'s Proposed Am. Compl.].)

neglecting, assaulting, and abusing consumers. (*Id.*, ¶ 11.) Specifically, Plaintiff observed staff verbally abusing one consumer, known as "K.C.," by calling him "it," "the thing," "the sparrow," and "the walking plague." (*Id.*, ¶ 12.) Plaintiff also observed K.C. being subjected to physical abuse, such as being hit with sticks and towels as well as having his hands purposely stepped on when he tried to crawl away from a mat on which he was forced to stay. (*Id.*) In addition, Plaintiff witnessed staff bending K.C.'s fingers backwards to cause him pain without leaving marks. (*Id.*) Finally, Plaintiff observed staff throwing food onto the floor for consumers to go after and eat off the floor. (*Id.*, ¶ 13.) According to Plaintiff, this was referred to by the staff as "playing fetch." (*Id.*) Moreover, K.C. was not allowed any food or water outside of meal times, and, if he threw his food, he was not allowed to eat for the rest of the meal. (*Id.*, ¶ 12.)

In response to this misconduct, Plaintiff alleges that she was told to keep her "eyes open and [her] mouth shut." (*Id.*, ¶ 11.) However, on October 20, 2010, Plaintiff reported the abuse to Defendant, Bill Murray, an employee of the Capital District Developmental Disabilities Services Office. (*Id.*, ¶ 14.) As a result of reporting the aforementioned abuse, Plaintiff claims she was subjected to "a campaign of retaliation and harassment that continues to the current time." (*Id.*) Specifically, Plaintiff alleges that, when she reported the abuse to Defendant Murray, he requested that she make four written statements regarding her observations. (*Id.*, ¶ 16.) Two days later, on October 22, 2010, Plaintiff was contacted again, and was asked to make a fifth written statement concerning her observations of abuse. (*Id.*) Plaintiff was then placed on paid administrative leave and was told that it was for her own "safety." (*Id.*, ¶ 17.)

Plaintiff alleges that, while on administrative leave, and following her return, in spite of her multiple written statements, she was called into the facility numerous times and interrogated as though she was not to be believed, and was repeatedly asked to recount the abuse she had witnessed to investigators, including Defendants Murray, Fleud, Bishop, and LaBarge. (*Id.*, ¶ 18.) On November 5, 2010, Plaintiff was allowed to return from administrative leave but was transferred from O.D. Heck to the Watervliet Facility. (*Id.*, ¶ 19.) Defendant Fleud visited Plaintiff at Watervliet and told her she was going to be "interrogated" and "grilled." (*Id.*, ¶ 20.) According to Plaintiff, she was advised that the repeated interrogations were necessary for purposes of investigation. (*Id.*, ¶ 20.) Thereafter, Defendants Fleud and Murray contacted Plaintiff and informed her that she was to report to O.D. Heck for another meeting where she was requested to re-enact the abuse she had witnessed involving K.C. being struck with sticks while he was forced to stay on a mat. (*Id.*, ¶ 21.) Plaintiff objected to participating in a re-enactment involving her striking Defendant Murray while being videotaped. (*Id.*) Despite Plaintiff repeatedly expressing her discomfort with this request, Defendants Murray and Fleud insisted that she participate. (*Id.*)

Due to the aforementioned events, Plaintiff claims she became overwhelmed by the fear of retribution, retaliation, and the constant scrutiny of her employer. (*Id.*, ¶ 22.) As a result, Plaintiff suffered emotional and mental stress, culminating in her doctor placing her on a medical leave of absence on January 7, 2011. (*Id.*) During her leave of absence, Plaintiff was notified that her leave would be converted to an "unauthorized leave without pay," without insurance or benefits, beginning on March 3, 2011. (*Id.*, ¶ 23.) According to Plaintiff, on March 3, 2011, she submitted a letter of resignation due to her inability to return to the hostile and intimidating work

environment and was, in effect, constructively discharged.  (*Id.*, ¶ 23-24.)  Plaintiff claims that, even after submitting her letter of resignation, she continued to be repeatedly summoned by Defendants for interrogation.  (*Id.*, ¶ 24.)  Plaintiff later learned that K.C. had been hospitalized, on or about February 28, 2011, and later died, allegedly due to malnourishment, on or about March 30, 2011, further compounding her stress and anxiety.  (*Id.*, ¶ 25.)

Based upon the foregoing, the Complaint sets forth the following eight groups of claims: (1) a claim that Defendants retaliated against Plaintiff for advocating on behalf of disabled patients, in violation of the First Amendment and 42 U.S.C. § 1983; (2) two separate claims that Defendants deprived Plaintiff of a property interest in her employment without due process, in violation of her rights to procedural and substantive due process under the Fourteenth Amendment and § 1983; (3) a claim that Defendants retaliated against Plaintiff for advocating on behalf of disabled patients, in violation of Title V of the Americans with Disabilities Act ("ADA");[3] (4) a claim that Defendants unlawfully interfered with, coerced, and intimidated Plaintiff, in violation of 42 U.S.C. § 12203(b) of the ADA; (5) a claim that Defendants retaliated against Plaintiff for reporting abuse of disabled patients to NYS OPWDD, in violation of the Rehabilitation Act; (6) a claim that Defendants' retaliation was unlawful under the New York State Human Rights Law ("HRL"), New York Executive Law § 296(6); and (7) a claim that Defendants violated Plaintiff's right to free speech, pursuant to Article I, § 8 of the New York State Constitution.  (*Id.*, ¶¶ 29-58.)

---

[3]     While Plaintiff's Complaint and Amended Complaint do not reference Titles II or III of the ADA, her opposition memorandum of law argues that her Title V claim is based on a violation of Titles II and/or III of the ADA.  (Dkt. No. 13, Attach. 1, at 3-7 [Pl.'s Opp'n Mem. of Law].)

In addition, Plaintiff seeks a declaratory judgment that Defendants violated Plaintiff's rights. (*Id.* at 12.) Finally, Plaintiff requests injunctive relief restraining Defendants from engaging in further retaliatory treatment, requiring NYS OPWDD to review and correct all discriminatory and retaliatory treatment within its facilities, mandate training and educational programs for employees regarding discrimination and retaliation, and requiring NYS OPWDD to issue annual reports demonstrating its efforts and success in providing a discrimination and retaliation-free environment. (*Id.*)

### B. Plaintiff's Proposed Amended Complaint

Plaintiff's proposed Amended Complaint sets forth factual allegations and claims that are substantially identical to those in her original Complaint. Therefore, for purposes of brevity, the Court will not restate those allegations here. Rather, the Court will note merely that Plaintiff has included allegations in her proposed Amended Complaint that appear to specify the participation of the individual Defendants in the deprivation of Plaintiff's rights and that Plaintiff has a property interest in her health insurance benefits. (Dkt. No. 13, Attach. 4, ¶¶ 17, 18, 23, 27, 38 [Pl.'s Proposed Am. Compl.].)

## II. RELEVANT LEGAL STANDARDS

### A. Legal Standard Governing Dismissal for Failure to State Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim. *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, a few words regarding that ground are appropriate. Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n.17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.

2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atl. Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

-7-

show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S.Ct. at 1949 (internal citations and alterations omitted). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

### B.     Legal Standard Governing Motions for Leave to Amend

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir.1993). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *See Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block–Bldg. 1 Hous*., 608 F.2d 28, 42 (2d Cir.1979); *Meyer v.*

*First Franklin Loan Servs, Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010); *Jones v. McMahon*, 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11, 2007).

"An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 [2d Cir.2002]).  Therefore a proposed amendment is not futile if it states a claim upon which relief can be granted.  *See Annunziato*, 293 F.R.D. at 333 (citations omitted).  As the Second Circuit has explained, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir.1993) (citations omitted); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir.1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").[4]

---

[4]   The Court notes that two Second Circuit cases exist reciting the standard as being that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  The problem with these cases is that their "rule out any possibility,

## C. Parties' Briefing on Defendants' Motion to Dismiss Plaintiff's Complaint and Plaintiff's Cross-Motion to Amend Her Complaint

### 1. Defendants' Memorandum of Law-in-Chief

Generally, in support of their motion to dismiss, Defendants assert eleven arguments. (Dkt. No. 6, Attach. 1, at 4-16 [Defs.' Mem. of Law].)  First, Defendants argue that Plaintiff's claims are time barred by the applicable three-year statute of limitations.  (*Id.* at 4-5.)

Second, Defendants argue that Plaintiff's ADA claims should be dismissed for the following reasons: (a) her claims for money damages, declaratory relief and prospective injunctive relief against NYS OPWDD and the individual defendants in their official capacities are barred by the Eleventh Amendment; (b) she failed to exhaust her administrative remedies by filing a complaint with the EEOC; and (c) her claims that her rights were violated after she reported her observations of abuse are not cognizable under the ADA because she has failed to allege that the patients were abused due to their disability and the ADA does not protect disabled individuals from abuse or mistreatment.  (*Id.* at 5-8.)

Third, Defendants argue that Plaintiff's claims under the Rehabilitation Act should be dismissed because such claims may not be brought against individual defendants in their personal capacities.  (*Id.* at 8.)

Fourth, Defendants argue that Plaintiff fails to sufficiently allege their personal involvement in the matters complained of to give rise to individual liability under § 1983.  (*Id.* at 9.)

---

however likely it might be" standard is rooted in the "unless it appears beyond doubt" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), which was "retire[d]" by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  *See Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (relying on *Branum v. Clark*, 927 F.2d 698, 705 [2d Cir. 1991], which relied on *Conley v. Gibson*, 355 U.S. 41, 45-46 [1957]).  Thus, this standard does not appear to be an accurate recitation of the governing law.

Fifth, Defendants argue that Plaintiff's claims under the First Amendment should be dismissed because her complaints regarding employee misconduct were related to internal employment issues and are not a matter of public concern. (*Id.* at 11.)

Sixth, Defendants argue that Plaintiff has not alleged facts plausibly suggesting an adverse employment action that supports her retaliation claims for the following reasons: (1) the fact that Plaintiff was questioned during an investigation after she reported employee misconduct cannot, in and of itself, support a retaliation claim; (2) being placed on administrative leave with pay is not an adverse action; and (3) Plaintiff's transfer to the Watervliet facility cannot be considered an adverse action because the Complaint does not allege facts plausibly suggesting that the transfer was detrimental to Plaintiff or her career. (*Id.* at 11-12.)

Seventh, Defendants argue that they are entitled to qualified immunity because it was not unreasonable to believe that it was acceptable under the First Amendment to question the person who both witnessed and reported employee misconduct. (*Id.* at 13-14.) In addition, Defendants argue that it was not unreasonable to place Plaintiff on a brief paid administrative leave and transfer her work location in light of safety concerns during the investigation. (*Id.*)

Eighth, Defendants argue that Plaintiff has failed to properly serve Defendants Bishop, Murray, and Fleud. (*Id.* at 14.)

Ninth, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims because, as discussed above, her federal claims should be dismissed. (*Id.*)

Tenth, Defendants argue that Plaintiff's state law claims brought under the New York State Constitution and HRL are barred by the Eleventh Amendment. (*Id.* at 15.)

Eleventh, and finally, Defendants argue that Plaintiff's claim based on constructive discharge should be dismissed because she was a probationary employee and, therefore, did not have a protected right to continued employment. (*Id.*) In addition, Defendants argue that Plaintiff failed to challenge her alleged constructive discharge in an Article 78 proceeding, which constitutes a meaningful post-deprivation remedy under the Due Process Clause of the Fourteenth Amendment. (*Id.* at 16.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendants' motion to dismiss, Plaintiff asserts the following arguments. First, Plaintiff argues that her claims are timely because her allegations form a course of continuing conduct that culminated in her constructive discharge on March 3, 2011, which was within three years from the time she filed her Complaint on February 25, 2014. (Dkt. No. 13, Attach. 1, at 2-3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that, because the Eleventh Amendment has been abrogated for Title II cases, the Eleventh Amendment does not bar her claims, which are based upon Title II and Title III. (*Id.* at 4-5.) Similarly, Plaintiff argues that, because she can bring claims under Title II, the Eleventh Amendment does not bar her retaliation claims under Title V, which are based upon Title II violations. (*Id.*)

Third, Plaintiff argues that, because she is not required to administratively exhaust claims under Title II, Title III, or Title V claims predicated on her rights under Title III, there is no exhaustion requirement for retaliation claims brought under Title II. (*Id.* at 5.)

Fourth, Plaintiff argues that her claims of retaliation are sufficiently pled to state a claim under Title V for the following reasons: (a) it can be inferred from her allegations that, because

disabled patients were the only ones being mistreated, they were being abused due to their disabilities; (b) her allegations are sufficient to plausibly suggest that she was coerced, intimidated, and threatened after reporting the abuse; and (c) the ADA protects a disabled individual's rights "to goods, services, facilities, or accommodations of a public space, in violation of Title III," and the right to "the most integrated setting" in violation of the "integration mandate" of Title II and the Rehabilitation Act. (*Id.* at 5-7.)

Fifth, Plaintiff argues that her claims under § 1983 are not barred by the Eleventh Amendment because, under *Ex Parte Young*, 209 U.S. 123 (1908), she may bring suit against state officials, in their official capacities, for prospective declaratory and injunctive relief to remedy an ongoing violation of federal law, which violation she has alleged. (*Id.* at 7.)

Sixth, Plaintiff argues that, contrary to Defendants' assertions, she has not alleged that Defendants are liable in their individual capacity under the Rehabilitation Act. (*Id.*)

Seventh, Plaintiff argues that she has sufficiently alleged the personal involvement of the individual Defendants for the following reasons: (a) she has alleged that Defendants Murray, Fleud, Bishop, and LaBarge met with and questioned her repeatedly and told her she would be "grilled" and "interrogated" throughout the process; (b) she has alleged that Defendants forced her to continuously recall and recreate events of abuse, despite Defendants' lack of effort to obtain any new information; (c) she has alleged that she was subjected to a continuous course of conduct, which caused her to suffer harm and injury and to be removed from work by her doctor; and (d) she has alleged that Defendants were personally involved by deciding to remove her from her position at O.D. Heck and transferring her to the Watervliet facility, placing her on administrative leave, and converting her medical leave of absence to an "unauthorized leave without pay." (*Id.* at 8-9.)

Eighth, Plaintiff argues she has sufficiently pled facts plausibly suggesting a First Amendment retaliation claim. (*Id.* at 9-13.) With regard to the protected speech element of this claim, Plaintiff argues that Defendant has applied the wrong test for this element: the mere fact that speech is internal does not automatically render it unprotected. (*Id.* at 9.) Rather, according to Plaintiff, speech made in furtherance of the speaker's job duties renders it unprotected. (*Id.* at 10.) Here, Plaintiff argues that her complaints regarding the abuse of disabled patients were not in furtherance of her job duties. (*Id.*) Instead, Plaintiff argues that, because she has alleged that she was told to "keep her eyes open and her mouth shut," it would appear that it was the policy and/or practice of NYS OPWDD to intentionally fail to report abuse. (*Id.* at 10-11.) Moreover, Plaintiff argues that the mistreatment and abuse of K.C., which ultimately led to his death, is a matter of public concern because it involves the mistreatment of vulnerable residents in a State-run facility. (*Id.*)

With regard to the adverse-action element of this claim, Plaintiff argues that, under the First Amendment, an adverse action is "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." (*Id.* at 11.) Plaintiff argues that, because she suffered adverse consequences as a result of attempting to stop the abuse of disabled patients, she has alleged facts plausibly suggesting an adverse employment action. (*Id.* at 11-13.)

Ninth, Plaintiff argues that Defendants are not entitled to qualified immunity for the following reasons: (a) qualified immunity is an affirmative defense and, because Defendants did not file or serve an answer, or otherwise raise the defense at any prior to filing their motion, Defendants have waived the defense; (b) Defendants have not demonstrated that they are

employed in positions which entitle them to qualified immunity; and (c) qualified immunity is ordinarily a question of fact and is not appropriate for consideration on a motion to dismiss. (*Id.* at 13-14.)

Tenth, Plaintiff argues that she effected proper service of process upon Defendants Bishop, Murray, and Fleud on May 5, 2014, when, upon information and belief, an "Administrative Aide" at Defendants' place of employment received and accepted service on their behalf. (Dkt. No. 13, ¶ 4 [Bosman Aff.].) Nevertheless, on June 27, 2014, Plaintiff re-served these Defendants after learning that they had relocated. (Dkt. No. 13, Attach. 1, at 14 [Pl.'s Opp'n Mem. of Law].) Accordingly, Plaintiff argues that Defendants' arguments regarding personal jurisdiction with respect to these individual Defendants are now moot. (*Id.*)

Eleventh, Plaintiff argues that, because her federal claims cannot be dismissed, there is no reason that this Court should not exercise supplemental jurisdiction over her state law claims. (*Id.* at 15.)

Twelfth, Plaintiff argues she has sufficiently pled facts plausibly suggesting a violation of her due process rights. (*Id.* at 15.) In the alternative, Plaintiff requests leave to amend her Complaint to include allegations that Defendant, Sheri Mayo, would not write a letter confirming that Plaintiff's medical coverage was exhausted (so Plaintiff could obtain health insurance elsewhere) unless Plaintiff resigned her position. (*Id.* at 15-16; Dkt. No. 13, Attach. 4, ¶¶ 23, 29 [Pl.'s Proposed Am. Compl.].) Plaintiff alleges in her proposed Amended Complaint that she has a property interest in her health benefits. (Dkt. No. 13, Attach. 4, ¶ 28 [Pl.'s Proposed Am. Compl.].) In addition, Plaintiff argues that an Article 78 proceeding is not a remedy which satisfies due process because it merely forces NYS OPWDD to hold a hearing and is not a

substitution for one. (Dkt. No. 13, Attach. 1, at 16 [Pl.'s Opp'n Mem. of Law].) Finally, Plaintiff argues that, because the standard of review for a mandamus-to-review petition is not de novo, it does not constitute an adequate post-deprivation remedy. (*Id.* at 16-18.)

### 3. Defendants' Opposition to Plaintiff's Cross-Motion to Amend Her Complaint and in Reply to Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's cross-motion, Defendants argue that, for the reasons discussed in Defendants' memorandum of law-in-chief, Plaintiff's proposed amendments are futile because they fail to allege facts plausibly suggesting the personal involvement of any individual Defendant in the alleged constitutional violations. (Dkt. No. 15, at 1 [Defs.' Reply].)

Generally, in reply to Plaintiff's opposition, Defendants assert the following two arguments. First, with respect to the timeliness of Plaintiff's claims, Defendants argue that the continuing violation doctrine is unsupported by the Complaint. (*Id.* at 2.) Specifically, Defendants argue that the Complaint alleges that Plaintiff (a) reported her observations to Defendants on October 20, 2010, (b) gave a fifth written statement on October 22, 2010, (c) was placed on administrative leave from October 22, 2010, until November 5, 2010, (d) was called into the facility and "interrogated" while on administrative leave, (e) was questioned and called into meetings to discuss and reenact her observations between November 5, 2010, and January 7, 2011, (f) was transferred to another OPWDD facility on January 7, 2011, and (g) was placed on medical leave on January 7, 2011. (*Id.*) According to Defendants, all of these allegations are untimely and her attempt to circumvent the applicable statute of limitations by alleging that Plaintiff's resignation from employment (which is timely) relate to the events listed above is not supported by case law. (*Id.*) Moreover, Defendants argue that the alleged acts of converting

Plaintiff's leave to unpaid leave, and discontinuing her health benefits after she was out of work for two months, cannot be viewed as a continuation of her being repeatedly questioned about her reports of employee misconduct. (*Id.* at 3.)

Second, and finally, Defendants repeat their arguments from their memorandum of law-in-chief regarding Plaintiff's ADA and First Amendment retaliation claims as a basis for their dismissal.

## III. ANALYSIS

### A. Whether Plaintiff's Claims Are Barred by the Applicable Statute of Limitations

After carefully considering the matter, the Court must answer this question in the negative, based on the factual allegations asserted in Plaintiff's Amended Complaint.

"[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwall v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994); *see also Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002) (explaining that a continuing violation is "composed of a series of separate acts that collectively constitute one unlawful employment practice") (internal quotation marks omitted). "The 'continuing violation' exception has been recognized not only in discrimination cases, but also more generally in section 1983 suits for retaliatory conduct." *Crosland v. City of New York*, 140 F. Supp. 2d 300, 307 (S.D.N.Y. 2001); *White-Ruiz v. City of New York*, 983 F. Supp. 365, 393 (S.D.N.Y. 1997) (holding that, where plaintiff suffered from a series of acts of retaliatory harassment after exposing acts of corruption by fellow officers, plaintiff alleged facts constituting a continuing wrong). In the context of

retaliation, "a lawsuit is timely as to any incident of retaliation in furtherance of an ongoing

policy . . . as to all claims of acts of retaliation under that policy even if they would be untimely

standing alone." *Crosland*, 140 F. Supp. 2d at 307. In other words, if a continuing violation is

found "the commencement of the statute of limitations period may be delayed until the last

discriminatory act in furtherance of it." *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir.

2001) (internal quotation marks and citations omitted).

However, the scope of the continuing violation doctrine is limited. "Multiple incidents of

discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism

do not amount to a continuing violation." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765

(2d Cir. 1998) (quoting *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 [2d Cir. 1993]). This is true

even when "discrete" discriminatory acts "are related to acts alleged in timely filed charges."

*Morgan*, 536 U.S. at 113. "A discriminatory act is a 'single completed action' that occurs at a

specific time, and typically is actionable on its own." *Lunardini v. Massachusetts Mut. Life Ins.*

*Co.*, 696 F. Supp. 2d 149, 165 (D. Conn. 2010) (citing *Elmenayer v. ABF Freight Sys., Inc.*, 318

F.3d 130, 135 [2d Cir. 2003]). In *Morgan*, the Supreme Court specifically identified

"termination, failure to promote, denial of transfer, or refusal to hire" as examples of discrete

acts, each of which "starts a new clock for filing charges." *Morgan*, 536 U.S. at 113-14. As

Defendants correctly note, "courts in the Second Circuit have viewed continuing violation

arguments with disfavor." *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d 393, 407

(E.D.N.Y. 2013) (internal citation and quotation omitted). Thus, only "compelling

circumstances will warrant the application of the exception to the statute of limitations." *De La*

*Pena*, 953 F. Supp. 2d at 407.

Here, construing the allegations in the light most favorable to Plaintiff, the Court finds that she has, albeit barely, alleged facts plausibly suggesting the applicability of the continuing-violation doctrine. The only act that occurred inside the limitations period (which extended from February 27, 2011, to February 27, 2014) was the OPWDD's alleged failure, between February 27, 2011, and March 3, 2011, to withdraw the OPWDD's demand that Plaintiff return to work on March 3, 2011, or have to begin paying for the medical coverage that the OPWDD afforded her pursuant to her employment with the OPWDD.

It is certainly possible that Defendants' alleged demand was taken pursuant to a policy. However, it is also possible that the demand was an unusual one that was caused by Defendants being fed up with Plaintiff for complaining (which would be impermissible under the circumstances). Of course, what is necessary, under *Twombly*, is not a *possible* suggestion of retaliatory motive but a *plausible* one. *Twombly*, 550 U.S. at 556 (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"). However, what nudges this allegation over the edge, from possible to plausible, are Plaintiff's alleged placement on paid administrative leave on October 22, 2010, her alleged transfer of employment on November 5, 2010, and her alleged aggressive questioning (and requests for further such questioning) between October 22, 2010, and January 7, 2011. Granting Plaintiff every reasonable inference, the Court must find that the decision to place her on unpaid leave and require her to pay for her employer medical coverage effective March 3, 2011 (should she not return to work), in light of Defendants' prior conduct, plausibly suggests an act of retaliation against her for previously complaining of disability discrimination against "consumers."

The Court hastens to add that, because the Court reaches this issue on a motion to dismiss for failure to state a claim and not a motion for summary judgment, any evidence of the following facts has not been adduced and may not be considered by the Court at this time: (1) the fact that the conversion of Plaintiff's paid leave to unpaid leave on March 3, 2011 (which appears to have been 40 work days from which she started taking paid leave) was pursuant to a policy that the OPWDD does not pay its employees indefinitely while on leave but for only a certain period due to cost; and (2) the fact that the medical coverage afforded to OPWDD's employees is not "exhausted" (or terminated) while they are on leave (and, rather, is "exhausted" only upon their separation of employment from the OPWDD), and that, when employees are on unpaid leave, they themselves must pay for that medical coverage, pursuant to a policy or legal requirement. The Court expresses no opinion on what conclusion the Court would reach if undisputed evidence of these facts is adduced on a motion for summary judgment.[5]

**B.     Whether Plaintiff's ADA Claims Are Barred by the Eleventh Amendment and Her Failure to Exhaust Her Administrative Remedies**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 13, Attach. 1, at 3-5 [Pl.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

---

[5]     Also of interest, but not necessary, for purposes of determining the applicability of the continuing-violation doctrine under the circumstances, would be any evidence establishing that any continued requests which were made, between January 7, 2011, and March 3, 2011, for the "interrogation" and "grill[ing]" of Plaintiff were due to a policy that was motivated by the OPDD's being placed in the position of having to thoroughly investigate claims of discrimination (and/or the suspicious hospitalization of "consumers"), or be held liable for negligence.

### 1.     Eleventh Amendment

In enacting 42 U.S.C. § 12202, Congress attempted to expressly abrogate state sovereign immunity for violations of the ADA.[6]  However, in *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356 (2001), the Supreme Court held that Congress did not validly abrogate state sovereign immunity from suit under Title I of the ADA, which relates to disability discrimination in the employment context.  *Garrett*, 531 U.S. at 374.  Shortly thereafter, in *Tennessee v. Lane*, 541 U.S. 509 (2004), the Supreme Court, distinguishing *Garrett*, held that Congress validly abrogated state sovereign immunity for suits brought under Title II of the ADA, which covers disability discrimination in public services, programs, and activities.  *Lane*, 541 U.S. at 533-34. Indeed, the Second Circuit has held that "a private suit brought pursuant to Title II of the ADA for money damages can only be maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 288 (2d Cir. 2003).  This also extends to Defendants in their official capacities for prospective injunctive relief.[7]  *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (holding that, in *Henrietta D.*, "we concluded that Title II and Rehabilitation Act suits for prospective injunctive relief may . . . proceed against individual officers in their official capacity").

---

[6]     Section 12202 states, in relevant part, "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."  42 U.S.C. § 12202.

[7]     The Court notes that the Eleventh Amendment does not bar claims asserted against Defendants under the NYSHRL in their individual capacities.  *Smith v. State Univ. of New York*, 00-CV-1454, 2003 WL 1937208, at *7 (N.D.N.Y. Apr. 23, 2003) (Scullin, J.).

As discussed above, Plaintiff argues that her claims are based upon complaints of Title II and Title III violations and, because Defendants are not shielded by sovereign immunity, her Title V retaliation claim, which is predicated on Title II and Title III, likewise cannot be barred by the Eleventh Amendment. Although the Supreme Court has not yet addressed whether states are immune from suits for retaliation claims brought under Title V's miscellaneous provisions, district courts in this Circuit have widely held that, in passing Title V, Congress did not validly abrogate state sovereign immunity. *See Padilla v. New York State Dep't of Labor*, 09-CV-5291, 2010 WL 3835182, at *4 (S.D.N.Y. Sept. 13, 2010) (noting that "every district court in this Circuit to consider the issue has concluded that sovereign immunity bars Title V claims") (collecting cases). Nevertheless, Plaintiff appears to be correct that the Eleventh Amendment will not bar a Title V claim when it is predicated on a Title II claim. *See DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 370-71 (D. Me. 2012) (holding that, "[w]here the underlying claim is predicated on alleged violations of Title II of the ADA, then the Title II abrogation of immunity is extended to ADA Title V retaliation claims."); *accord*, *Demby v. Md. Dep't of Health & Mental Hygiene*, 06-CV-1816, 2009 WL 415265, at *1 (D. Md. Feb. 13, 2009) (collecting cases); *Sarkissian v. W. Va. Univ. Bd. of Governors*, 05-CV-0144, 2007 WL 1308978, at *8 (N.D.W. Va. May 3, 2007); *see also McInerney v. Rensselear Polytechnic Inst.*, 505 F.3d 135, 139 (2d Cir. 2007) (noting that Title V retaliation claims may be "predicated on asserting one's rights under Title III"). Therefore, insofar as Plaintiff can state a claim under Title II and Title III of the ADA, her Title V claim will not be barred by the Eleventh Amendment.

### 2. Exhaustion of Administrative Remedies

Plaintiff's Title II and Title III claims are not barred due to a failure to exhaust her administrative remedies. It is well established that, "[u]nlike Title I, Title II does not require a plaintiff to exhaust his administrative remedies prior to filing suit." *Syken v. State of New York*, 02-CV-4673, 2003 WL 1787250, at *9 (S.D.N.Y. Apr. 2, 2003). "This is because Title I incorporates the remedies and procedures of Title VII, which contains a charge requirement, while Title II incorporates the provisions of the Rehabilitation Act, which does not contain a charge requirement." *Syken*, 2003 WL 1787250, at *9 n.11. With respect to Title III, "[t]he language and structure of the ADA demonstrate that Title III, unlike Title I, does not require administrative exhaustion." *McInerney*, 505 F.3d at 139.

**C.**  **Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Retaliation Claim Under Title V of the ADA (Based on a Violation of Title II and/or Title III), Section 504 of the Rehabilitation Act, and the NYSHRL**

After carefully considering the matter, the Court answers this question in the affirmative with regard to Plaintiff's retaliation claims under (1) Title V of the ADA to the extent they are based on a violation of Title II, (2) Section 504 of the Rehabilitation Act, and (3) the NYSHRL, for the reasons stated in Plaintiff's opposition memorandum of law (Dkt. No. 13, Attach. 1, at 5-7 [Pl.'s Mem. of Law]) and the reasons discussed below; however, the Court answers this question in the negative with regard to her retaliation claims under Title V of the ADA to the extent they are based on a violation of Title III, for the reasons discussed below.

1.    **Plaintiff's Retaliation Claims Under Title V of the ADA (Based on a Violation of Title II), Section 504 of the Rehabilitation Act, and the NYSHRL[8]**

The Second Circuit analyzes retaliation claims under the ADA "using the same framework employed in Title VII cases." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.2d 208, 223 (2d Cir. 2001). Therefore, to establish a claim of retaliation under the ADA, a plaintiff must show the following: "(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). "Although the burden at the prima facie stage is *de minimis*, Plaintiff must proffer at least competent evidence of circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Smiley v. Cassano*, 10-CV-3866, 2012 WL 967436, at *4 (S.D.N.Y. Mar. 21, 2012).

"With respect to the first element . . . in order to establish a prima facie case, Plaintiff must prove that he engaged in a 'protected activity.' Protected activity 'refers to action taken to protest or oppose statutorily prohibited discrimination.'" *Smiley*, 2012 WL 967436, at *5 (quoting *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 [2d Cir. 2000]). Regarding the third prong, "[a]dverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge." *Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001).

---

[8]    "Retaliation claims under the ADA and the NYSHRL are analyzed under the same *McDonnell Douglas* burden-shifting framework as discrimination claims." *Hong Yin v. N. Shore LIJ Health Sys.*, 20 F. Supp. 3d 359, 374 (E.D.N.Y. 2014); *accord*, *Croons v. New York State Office of Mental Health*, 18 F. Supp. 3d 193, 207 (N.D.N.Y. 2014) (Hurd, J.). "[S]o the Court's discussion of the federal ADA claims applies to the state claims as well." *Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 440 n.10 (E.D.N.Y. 2009).

"Constructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003). "To find that an employee's resignation amounted to a constructive discharge, the trier of fact must be satisfied that the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Fitzgerald*, 251 F.3d at 357-58 (quotations and alterations omitted).

"To assert a claim under Title II of the ADA or section 504 of the Rehabilitation Act, a plaintiff must demonstrate that (1) he is a qualified individual with a disability; (2) the defendant is subject to one of the Acts; and (3) he was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant because of his disability." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2010); *accord*, *Ortiz v. City of New York*, 12-CV-3118, 2012 WL 6200397, at *10 (S.D.N.Y. Dec. 12, 2012) (noting that "[t]he elements of a § 504 Rehabilitation Act claim are nearly identical [to an ADA violation], and require only that a plaintiff also demonstrate that 'the benefit [in question] is part of a program or activity receiving Federal financial assistance'") (quoting *Doe v. Pfrommer*, 148 F.3d 73, 82 [2d Cir. 1998]). Furthermore, "a showing of discriminatory animus or ill will based on disability is necessary to recover damages under Title II in a private action against a state." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001).

Here, Defendant correctly argues that Title II protects against injury to a disabled person only when they are discriminated against "by reason of their disability." 42 U.S.C. § 12132. Conversely, Plaintiff appears to concede that she has not alleged specific facts plausibly suggesting that the consumers were mistreated by reason of their disability. Rather, as discussed above in Part I.C.2. of this Decision and Order, Plaintiff argues that it is sufficient to allege that the consumers were the only ones being mistreated because "[p]leading requirements are not so strict and narrow as to require Plaintiff . . . to also allege that the mistreatment of the disabled was due to the fact that they were disabled . . . . The fact that the disabled were the only recipients of the mistreatment and abuse is sufficient to give notice of Plaintiff's claims." (Dkt. No. 13, Attach. 1, at 6 [Pl.'s Opp'n Mem. of Law].)

The Court cannot accept this portion of Plaintiff's argument. A crucial element of Plaintiff's retaliation claim is that her speech was protected because it regarded discrimination against another person "by reason of" that other person's disability. As a result, to state such a claim, she must plead facts plausibly suggesting such causation. It is completely circular to argue that such causation exists because "the disabled were the only recipients of the mistreatment and abuse": based on Plaintiff's own allegations, there were no non-disabled "consumers" present at the home who could have been mistreated. Moreover, Plaintiff's conspicuous failure to allege that *all* consumers were mistreated suggests that *some* consumers were not mistreated, undermining her theory that disability was the cause of the mistreatment that allegedly occurred.

As the U.S. District Court for the Eastern District of Wisconsin observed,

> [T]he mistreatment of disabled individuals does not mean those individuals were discriminated against or denied benefits "by reason of" their disability, and that is what the statute protects . . . .
>
> Suppose that instead of a home for the disabled we were dealing with conditions at a women's prison. If the allegation was that certain female inmates were being mistreated, no one would conclude that they were being discriminated against on the basis of their gender–the alleged victims were not treated worse than men. Similarly, the fact that residents of a home for the disabled are allegedly mistreated does not mean that such treatment is 'by reason of' their disability. Otherwise, any tort committed in a facility for a specifically protected group would be turned into a discrimination case. The ADA does not protect against every injury suffered by disabled persons–it merely guards against injuries they suffer *because* they are disabled.

*Beaver v. Melotte*, 08-C-0187, 2008 WL 4610317, at *1 (E.D. Wis. Oct. 15, 2008) (emphasis in original); *cf. Henrietta D.*, 331 F.3d at 276 (noting that "the ADA and Rehabilitation Act are addressed to 'rules . . . that hurt [people with disabilities] *by reason of their handicap*, rather than that hurt them solely by virtue of what they have in common with other people . . . . In other words, there must be something different about the way the plaintiff is treated 'by reason . . . of disability'") (quoting *Good Shepard Manor Found, Inc. v. City of Momence*, 323 F.3d 557, 561 [7th Cir. 2003]).

Nonetheless, the Court must find that Plaintiff has, albeit barely, alleged facts plausibly suggesting that one or more consumers were mistreated due to their disability. Specifically, Plaintiff alleges that the consumer K.C. was called "it," "the thing," "the sparrow," and "the walking plague." (Dkt. No. 1, ¶ 12.) These epithets suggest that the speaker (who presumably was one of the individuals who otherwise mistreated K.C.) considered K.C. less than human due to some physical deformity such as one that sometimes afflicts disabled persons. *See Heinke v.*

*Cty. of Tehama Sheriff's Dept.*, 12-CV-2433, 2013 WL 3992407, at *5 (E.D. Cal. Aug. 1, 2013) ("Plaintiff also alleges that, upon asking for food and water during his segregation, he was ridiculed by the guards for 'hobbling around like a frog,' which suggests that Plaintiff was excluded from receiving foo[d] and water by reason of his disability.").  Similarly, Plaintiff alleges that unidentified "consumers" were subjected to a game called "fetch," in which they would "go after and eat . . . food off the floor" after the food had been thrown there by staff. (Dkt. No. 1, ¶ 12.)  This suggests that the staff members participating in the game were knowingly taking advantage of the consumers' inability to pick the food up off the floor and/or decline to "play."

For these reasons, the Court denies Defendants' motion to dismiss Plaintiff's retaliation claims under (1) Title V of the ADA to the extent that they are based on a violation of Title II, (2) Section 504 of the Rehabilitation Act, and (3) the NYSHRL.

### 2. Plaintiff's Retaliation Claims Under Title V of the ADA (Based on a Violation of Title III)

To the extent they are based on a violation of Title III, Plaintiff's claims under Title V must be dismissed because "Title III expressly does not apply to public entities, including local governments." *Bloom v. Bexar Cty.*, 130 F.3d 722, 726 (5th Cir. 1997); *Morales v. New York*, 22 F. Supp. 3d 256, 267 (S.D.N.Y. 2014) (stating that "[a] claim under Title III of [the ADA] can only be asserted against a private entity engaged in the provision of public accommodations, such as an inn, hotel or private school . . . . Title III is not applicable to public entities") (collecting cases).  Because the NYS OPWDD is a public entity, Plaintiff cannot assert against it a Title V claim that is based on a violation of Title III.

**D.** **Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Claim of Interference, Coercion or Intimidation Under 42 U.S.C. § 12203(b) of the ADA**

Because the Court rejects Defendants' argument that Plaintiff has not alleged facts plausibly suggesting that one or more consumers were mistreated due to their disability (*see, supra,* Part III.C.1. of this Decision and Order), the Court denies Defendants' motion to dismiss Plaintiff's claim of interference, coercion or intimidation under 42 U.S.C. § 12203(b) of the ADA.

**E.** **Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Retaliation Claim Under the First Amendment and a Free Speech Claim Under Article I, § 8 of the New York State Constitution**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law. (Dkt. No. 6, Attach. 1, at 10-12 [Defs.' Mem. of Law].) To those reasons, the Court adds the following analysis.

"To prevail on a First Amendment retaliation claim brought under 42 U.S.C. § 1983, a [plaintiff] must demonstrate '(1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" *Ford v. Palmer*, 539 F. App'x 5, 6 (2d Cir. 2013) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 [2d Cir. 2009]).

As an initial matter, the Court must determine whether Plaintiff's underlying speech was protected by the Constitution. *See Sousa v. Roque*, 578 F.3d 164, 169-70 (2d Cir. 2009) ("It is established law in this Circuit that, regardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment."). The Supreme Court has explained that this entails looking first to "whether the employee spoke as a citizen on a

matter of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). "This inquiry has two prongs: (1) whether the employee spoke on a matter of public concern; and (2) whether the employee spoke 'as a citizen,' rather than in his capacity as a public employee." *Pisano v. Mancone*, 08-CV-1045, 2011 WL 1097554, at *9 (S.D.N.Y. Mar. 18, 2011). "A matter of public concern is one that relates to 'any matter of political, social, or other concern to the community,' as opposed to one that addresses merely personal employee grievances." *Pisano*, 2011 WL 1097554, at *9 (quoting *Connick v. Myers*, 461 U.S. 138, 146 [1983]). In the present case, it is reasonable to conclude that the abusive treatment of disabled patients residing in a state facility is a matter of public concern. *See Barclay v. Michalsky*, 451 F. Supp. 2d 386, 396 (D. Conn. 2006) (noting that "it is not difficult to conclude that plaintiff's speech concerned a matter of public concern–the treatment of psychiatric patients at a state facility and the systems and policies in place to ensure those patients receive proper treatment and adequate care").

With respect to the second prong, the Court must determine whether Plaintiff's internal complaint was made in furtherance of her job duties or whether she was speaking as a "citizen." On this point, Defendants cite to allegations in Plaintiff's Complaint, arguing that, when Plaintiff reported staff misconduct, she did so in furtherance of her job duties. (Dkt. No. 6, Attach. 1, at 11 [Defs.' Mem. of Law]). Conversely, Plaintiff argues that the Complaint alleges only that "[h]er duties involved providing support, care, assistance and attending disabled clients known as 'consumers' with activities of daily living." (Dkt. No. 13, Attach. 1, at 11 [Pl.'s Opp'n Mem. of Law]; Dkt. No., ¶ 1 [Pl.'s Compl.]). Furthermore, Plaintiff argues that, in response to the abuse she observed, she was instructed to "keep her eyes open and [her] mouth shut," indicating "that the Defendants['] policy and/or practice was to *intentionally fail to report abuse*." (Dkt. No. 13, Attach. 1, at 11 [Pl.'s Opp'n Mem. of Law] [emphasis in original]; Dkt. No. 1, ¶ 11 [Pl.'s Compl.].)

The Court is unpersuaded by Plaintiff's argument. The Second Circuit has concluded that "under the First Amendment, speech can be 'pursuant to' a public employee's official job duties even though it is not required by, or included in, the employee's job description, or in response to a request by the employer." *Weintraub v. Bd. of Educ. of City Sch. of City of New York*, 593 F.3d 196, 203 (2d Cir. 2010). Rather, speech is "pursuant to" a public employee's official duties if it was "part-and-parcel of [her] concerns about [her] ability to properly execute [her] duties." *Weintraub*, 593 F.3d at 203. That is, if the speech was a "means to fulfill, and undertaken in the course of, performing [the public employee's] primary employment responsibility," then it was pursuant to the public employee's official duties. *Id.*

Here, as stated above, Plaintiff's Complaint alleges that she was responsible for "providing support, care, [and] assistance" to the consumers. Because Plaintiff was responsible for the consumers' care, it belies logic to conclude that reporting staff mistreatment of them to her supervisors would not also be "part-and-parcel" of her official duties. Accordingly, the Court concludes that, when Plaintiff reported staff misconduct involving the abuse and mistreatment of consumers, her speech was made pursuant to her job duties and was not made as a citizen. Thus, there is no First Amendment protection for Plaintiff's speech.

Because the Court has reached this determination regarding Plaintiff's First Amendment retaliation claim, Plaintiff's free speech claim under Article I, § 8 of the New York State Constitution must be, and is, also dismissed. *See Novak v. Bd. of Educ. of Fayetteville-Manlius Cent. Sch. Dist.*, 05-CV-0199, 2007 WL 804679, at *7 n.8 (N.D.N.Y. Mar. 14, 2007) (Scullin, J.) (noting that Art. I, § 8 "contains free speech protections that are analogous to those in the federal constitution, and the same legal standards apply"); *accord*, *Carter v. Inc. Vill. of Ocean Beach*, 693 F. Supp. 2d 203, 212 (E.D.N.Y. 2010); *Housing Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001).

**F.      Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Violation of Her Procedural and Substantive Due Process Rights**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 6, Attach. 1, at 15-16 [Defs.' Mem. of Law].)  To those reasons, the Court adds the following analysis.

Defendants assert alternative arguments for the dismissal of Plaintiff's due process claims: (1) because Plaintiff was a probationary employee, she does not have a protected right to continued employment and could be terminated at any time without a hearing or other process; and (2) even if Plaintiff were not a probationary employee, the due process clauses were not violated because the state provided her a meaningful post-deprivation remedy through the availability of an Article 78 proceeding.

With regard to Defendants' first argument, it appears that Departmental Aide Trainees are typically, if not always, probationary employees.[9]  However, the Court cannot assume that fact on a motion to dismiss for failure to state a claim without a factual allegation in the Complaint plausibly suggesting the fact or a citation in Defendants' motion papers to a regulation or statute stating the fact.  Moreover, it is unclear whether Plaintiff remained a

---

[9]      *See, e.g., McLaughlin v. New York*, 11-CV-1242, 2013 WL 3915183, at *1 (S.D.N.Y. July 30, 2013) ("Patty McLaughlin was hired by defendant DDSO as a Developmental Aide Trainee ('DAT') in January 2009. . . .  The DAT position was a probationary one and conferred no tenure rights."); *Caraway v. New York State Office for People With Dev. Disabilities*, 990 N.Y.S.2d 436, at *2-3 (N.Y. Sup. Ct., Dutchess Cty., 2014) ("Petitioner alleges that he served his probationary term as Developmental Aide and was permanently appointed to said position. . . .  Respondent asserts that petitioner was hired on April 16, 1992 in the title of Developmental Aide Trainee. Upon completion of his probation, on July 16, 1993, petitioner was permanently appointed to the Developmental Aide position. . . . Based upon the documentation as submitted, it is clear that petitioner was appointed to the Developmental Aide Traineeship level on April 16, 1992, with a probationary status for the period of nine (9) to fifteen (15) months.").

probatory employee until March 3, 2011.[10]  For these reasons, the Court must reject Defendants' first argument.

With regard to Defendants' second argument, Defendants cite four cases in support of the point of law that, in New York, an Article 78 proceeding constitutes a meaningful post-deprivation remedy.  *See, e.g., Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996) ("We have held on numerous occasions that an Article 78 proceeding is a perfectly adequate postdeprivation remedy in the present situation [in which a city contractor challenged the termination of his city contracts].") (citing cases); *Gudema v. Nassau Cty.*, 163 F.3d 717, 724 (2d Cir. 1998) ("We see no reason why an Article 78 proceeding did not provide Gudema with a meaningful remedy in the wake of Davis's order [suspend Gudema's license].");  *Fotopolous v. Bd. of Fire Comm'rs*, 11 F. Supp. 3d 348, 371-72 (E.D.N.Y. 2014) ("While a public employee with a property right in his job is normally entitled to a pre-termination hearing, it is impractical for employees who are constructively discharged to obtain a pre-termination hearing, and the availability of an Article 78 proceeding subsequent to termination provides adequate procedural due process.") (collecting cases); *Clark v. Dominique*, 798 F. Supp. 2d 390, 401 (N.D.N.Y. 2011) ("Upon review of the relevant provisions of the New York State Civil Service Law, and in light of Clark's allegations and admissions, the court finds that because Clark failed, without legitimate exception, to pursue an Article 78 proceeding–which was both available and more than adequate in light of the interests asserted and the actions alleged–she may not maintain a civil action for deprivation of her property without due process.").

---

[10]     *See Jones v. New York State Metro Dev. Disabilities Servs. Office*, 10-CV-0898, 2012 WL 2478344, at *1 (S.D.N.Y. June 28, 2012) ("Jones, an African-American, was employed by Metro New York Developmental Disabilities Services Office . . . as a Probationary Developmental Aide Trainee from February 14, 2008, through April 21, 2008.").

In her response, Plaintiff does not attempt to explicitly distinguish these cases from her case. (Dkt. No. 13, Attach. 1, at 17-20 [attaching pages "15" through "18" of Pl.'s Opp'n Memo. of Law].) Rather, she appears[11] to urge the Court to depart from existing law. While creative, her conclusion that the "deferential standard of review precludes the mandamus-to-review Article 78 proceeding from constituting an adequate post-deprivation remedy" is both unsupported by a citation to case law and unpersuasive. (*Id*. at 18 [attaching pages "15" through "18" of Pl.'s Opp'n Memo. of Law].)

### G. Whether Plaintiff Has Alleged Facts Plausibly Suggesting a Claim Under Section 1983

Because the Court has determined that the only claims surviving Defendants' motion are Plaintiff's claims under the ADA, Rehabilitation Act, and the NYSHRL, her claim under § 1983 must be dismissed. Specifically, "[c]ourts have uniformly held that the ADA's comprehensive remedial scheme precludes Section 1983 claims predicated on ADA violations." *George v. New York City Trans. Auth.*, 13-CV-7986, 2014 WL 3388660, at *3 (S.D.N.Y. July 11, 2014) (citing *Vinson v. Thomas*, 288 F.3d 1145, 1156 [9th Cir. 2002]); *see also Bartlett v. N.Y. State Bd. of Law Exam'rs*, 970 F. Supp. 1094, 1144 (S.D.N.Y. 1997) (Sotomayor, J.) (dismissing Plaintiff's § 1983 claim, in part, "because it is undeniable that the ADA and the Rehabilitation Act create enforceable rights"), *aff'd in part and vacated in part on other grounds*, 156 F.3d 321 (2d Cir. 1998). Similarly, "the New York Human Rights Law [cannot] serve as a basis for a § 1983 claim." *Jordan v. Cayuga Cty.*, 01-CV-1037, 2004 WL 437459, at *7 (N.D.N.Y. Feb. 9, 2004) (Scullin, J.).

---

[11]   The Court says "appears" because nowhere in Plaintiff's argument does she acknowledge that the point of law cited by Defendants is indeed good and that she is attempting to change it.

### H. Whether Plaintiff's Federal Claims Against the Individual Defendants Should Be Dismissed

As discussed above, Plaintiff's claims under the ADA and Rehabilitation Act are the only federal claims that survive Defendants' motion. Significantly, "[i]ndividuals in their personal capacities are not proper defendants on claims brought under the ADA or the Rehabilitation Act, although individuals can be sued in their official capacities under these statutes." *Keitt v. New York City*, 882 F. Supp. 2d 412, 456-57 (S.D.N.Y. 2011) (citing *Harris v. Mills*, 572 F.3d 66, 72 [2d Cir. 2009] [noting that "[t]he real party in interest in an official-capacity suit is the government entity"]); *Andino v. Fischer*, 698 F. Supp. 2d 362 (S.D.N.Y. 2010) ("[B]ecause the ADA targets public entities, individuals cannot be named as defendants in their individual capacities."); *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381 (S.D.N.Y. 2011) ("[T]he ADA does not provide for personal liability on the part of non-employer individuals, except in the case of claims under Title II of the ADA asserted against individuals in their official capacity.").

As an initial matter, Plaintiff acknowledges in her opposition memorandum of law that she is not seeking to hold the Defendants individually liable under the Rehabilitation Act. (Dkt. No. 13, Attach. 1, at 7 [Pl.'s Mem. of Law]). Regarding Plaintiff's ADA claims, "where a plaintiff has sued the state or a state entity under the ADA, and an official capacity claim against an individual defendant would be redundant, courts in this Circuit have dismissed ADA claims against individual defendants in their official capacities." *Loadholt v. DOC*, 09-CV-0553, 2009 WL 4230132, at *3 (W.D.N.Y. Nov. 24, 2009); *accord*, *Hallett v. DOCCS*, 109 F. Supp. 2d 190, 199-200 (S.D.N.Y. 2000) (holding that, "[b]ecause plaintiff is able to assert his ADA and Rehabilitation Act claims against DOCS directly, I find that there is no justification for allowing

plaintiff to also assert ADA and Rehabilitation Act claims against the individual defendants in their official capacities."); *Fox v. State Univ. of New York*, 497 F. Supp. 2d 446, 451 (E.D.N.Y. 2007) (collecting cases).

However, as briefly referenced above in Part III.B.1. of this Decision and Order, Plaintiff may seek prospective declaratory or injunctive relief against Defendants in their official capacities. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 73 (1996) (holding that, under the *Ex Parte Young* doctrine, the Eleventh Amendment does not bar a "suit against a state official when that suit seeks . . . prospective injunctive relief"). In order to do so, Plaintiff need not establish the Defendants' personal involvement. *See Bodie v. Morgenthau*, 342 F. Supp. 2d 193, 203 (S.D.N.Y. 2004) (holding that, "[w]hile a plaintiff may not pursue money damages against an individual defendant who lacks personal involvement with the underlying offense, that does not preclude a plaintiff from seeking prospective, injunctive, [or declaratory] relief against the same defendant."); *Marshall v. Switzer*, 900 F. Supp. 604, 614 (N.D.N.Y. 1995) ("[N]otwithstanding [defendant's] lack of personal involvement in the alleged wrongful conduct, plaintiff's claims for declaratory and injunctive relief . . . are not barred.") (Scullin, J.); *accord*, *Justice v. Hulihan*, 11-CV-0419, 2013 WL 5506326, at *4 (N.D.N.Y. Oct. 4, 2013) (Sharpe, J.). Accordingly, Plaintiff may proceed on her claims for prospective declaratory and injunctive relief against Defendants in their official capacities (without the Court having to determine whether Defendants were personally involved in the alleged violations). *See Loadholt*, 2009 WL 4230132, at *4 (dismissing plaintiff's Title II claims against individual defendants but allowing plaintiff to proceed on his claims for prospective declaratory and injunctive relief).

Finally, because the Court has determined that no federal claims remain against Defendants in their individual capacity for money damages, Defendants' argument that they are entitled to qualified immunity is moot. *See State Emps. Bargaining Agent Coal. v. Rowland*, 03-CV-0221, 2006 WL 141645, at *5 (D. Conn. 2006) (holding that, "because qualified immunity does nothing more than immunize a defendant from an award of money damages, and the court has already concluded that the plaintiffs may not recover money damages under principles of Eleventh Amendment immunity, the defense is moot."); *Nicholas v. Miller*, 189 F.3d 191, 195 (2d Cir. 1999) (holding that, "since qualified immunity only shields appellees from monetary damages, [plaintiff's] claims for equitable relief may proceed."); *accord*, *Gage v. New York State Dep't of Health*, 204 F. Supp. 2d 399, 403 (N.D.N.Y. 2002) (Hurd, J.).

**I.        Whether Plaintiff's Cross-Motion to Amend Should Be Granted**

As stated above, the Court finds that the following claims must be dismissed for failure to state a claim upon which relief can be granted: (1) Plaintiff's retaliation claims under Title V of the ADA to the extent they are based on a violation of Title III; (2) her retaliation claim under the First Amendment and 42 U.S.C. § 1983; (3) her free speech claim under Article I, § 8 of the New York State Constitution; (4) her substantive and procedural due process claims under the Fourteenth Amendment and 42 U.S.C. § 1983; and (5) her retaliation claims under the Rehabilitation Act, and Title V of the ADA to the extent they are based on a violation of Title II, against the individual Defendants in their personal capacities. Because Plaintiff's proposed Amended Complaint does not correct the pleading defects in those claims, and because Defendants have not offered any reasons that Plaintiff's cross-motion for leave to amend her Complaint should be denied other than their argument that her claims are futile (which the Court

has partially rejected), the Court denies Plaintiff's cross-motion in part and grant it in part. *See*

*Cimino v. Glaze*, 228 F.R.D. 169, 174 (W.D.N.Y. 2005) (granting Plaintiff's motion for leave to

file an amended complaint in part); *accord*, *Manigaulte v. C.W. Post of Long Island Univ.*, 659

F. Supp. 2d 367, 375 (E.D.N.Y. 2009); *Bay Harbour Mgmt., LLC v. Carothers*, 474 F. Supp. 2d

501, 505 (S.D.N.Y. 2007).

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss Plaintiff's Complaint (Dkt. No. 6) is

**<u>GRANTED</u> in part** and **<u>DENIED</u> in part**, such that all of Plaintiff's claims are **DISMISSED**

**except** the following claims, which **SURVIVE** Defendants' motion:

> (1) Plaintiff's claims of retaliation under the Rehabilitation Act, and Title V of
>
> ADA to the extent they are based on a violation of Title II, against the individual
>
> Defendants in their official capacities for prospective declaratory and injunctive
>
> relief;
>
> (2) Plaintiff's claims of retaliation under the Rehabilitation Act, and Title V of the
>
> ADA to the extent they are based on a violation of Title II, against Defendant
>
> NYS OPWDD;
>
> (3) Plaintiff's claim of interference, coercion or intimation under 42 U.S.C. §
>
> 12203(b) of the ADA against Defendant NYS OPWDD;[12] and
>
> (4) Plaintiff's claim of retaliation under N.Y. Executive Law § 296(6) against all
>
> Defendants; and it is further

---

[12]     The Court notes that Plaintiff does not request declaratory and injunctive relief
against the individual Defendants with regard to her claim of interference, coercion or intimation
under 42 U.S.C. § 12203(b) of the ADA.  (Dkt. No. 13, Attach. 4, at ¶¶ 45-47.)

**ORDERED** that Plaintiff's cross-motion for leave to file an Amended Complaint (Dkt. No. 13) is **GRANTED in part** and **DENIED in part**, such that Plaintiff may file a signed copy of her proposed Amended Complaint, but all of the claims contained therein are **DISMISSED except** the claims recited in the preceding paragraph; and it is further

**ORDERED** that Plaintiff shall file a signed copy of her Amended Complaint within **SEVEN (7) DAYS** of the date of entry of this Decision and Order. Defendants are directed to file an answer to the Plaintiff's Amended Complaint within Fourteen (14) days from the date that Plaintiff files her Amended Complaint pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a), and this case is referred back to Magistrate Judge Hummel for the setting of pretrial scheduling deadlines.

Plaintiff is reminded of her duty to timely serve Lisa Meisner, and her duty to timely identify and serve the John and Jane Doe Defendants, or risk dismissal of her claims against those individuals.

Dated: September 30, 2015
 Syracuse, New York

Hon. Glenn T. Suddaby
Chief, U.S. District Judge